UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 15-CV-1380 (JFB) (SIL)

———————————

GARDEN CITY APARTMENTS, LLC,

Plaintiff,

VERSUS

XCEL PLUMBING OF NEW YORK, INC.,

Defendant/Third-Party Plaintiff,

VERSUS

EDI ARCHITECTURE, P.C., ET AL.,

Third-Party Defendants.

———————————

**MEMORANDUM AND ORDER**
January 18, 2017

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Garden City Apartments, LLC ("plaintiff") brings this diversity action against Xcel Plumbing of New York, Inc. ("defendant") for breach of contract and negligence under New York law.[1] Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and argues that plaintiff's potential recovery from defendant is limited by a subrogation waiver in the contract at issue. For the reasons stated below, the motion is denied.

I. BACKGROUND

A. Facts

The following facts are taken from the parties' affidavits and exhibits, as well as their respective Rule 56.1 statements of fact ("Def.'s 56.1," ECF No. 61-1; "Pl.'s 56.1" and "Pl.'s 56.1 Counterstatement," ECF No. 67-2; and "Def.'s 56.1 Counterstatement Resp.," ECF No. 71). Unless otherwise noted, the facts are either undisputed or uncontroverted. Upon consideration of the motion for summary judgment, the Court shall construe the facts in the light most

---

[1] Defendant has also filed a third-party complaint against several third-party defendants (ECF No. 15), but the instant motion does not concern the claims therein.

1

favorable to plaintiff as the nonmoving party, and will resolve all factual ambiguities in its favor. *See Capobianco v. New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2001).

This action arises out of property damage from a fire at an apartment home community owned by plaintiff. (Def.'s 56.1 ¶ 1; Pl.'s 56.1 ¶ 1.) Pursuant to two trade contracts dated August 17, 2011 (the "Trade Contracts"), defendant contracted with AvalonBay Communities, Inc. ("AvalonBay") to perform plumbing and fire protection work (the "Work") at a project located at 998 Stewart Avenue, Garden City, New York (the "Property"). (Def.'s 56.1 ¶¶ 2, 5; Pl.'s 56.1 ¶¶ 2, 5.) Plaintiff is a third-party beneficiary of the Trade Contracts. (Def.'s 56.1 ¶ 3; Pl.'s 56.1 ¶ 3.)

Both Trade Contracts include the following provision:

> 32. **INSURANCE**
> ….
> d. **Property Insurance**. The Builder's Risk or property insurance purchased by OWNER provides coverage for CONTRACTOR and OWNER for loss or damage to the Work. CONTRACTOR shall be responsible for the insurance policy deductible amount applicable to damage to the Work and/or damage to other work caused by CONTRACTOR. CONTRACTOR shall procure and maintain, at its own expense, insurance for its own property and equipment stored on the site, off the site or in transit. OWNER and CONTRACTOR waive all rights against each other and against all other contractors or subcontractors for loss or damage to the extent reimbursed by Builder's Risk or any other property or equipment insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance. If the policies of insurance referred to in this Section require an endorsement or consent of the insurance company to provide for continued coverage where there is a waiver of subrogation, the party procuring such policies shall cause them to be so endorsed or obtain such consent.

(Def.'s 56.1 ¶ 8; Pl.'s 56.1 ¶ 8; Def.'s 56.1 Ex. B, ECF No. 61-3, at 19; Def.'s 56.1 Ex. C, ECF No. 61-4, at 19.) AvalonBay carries an insurance policy (the "Policy")[2] that covers the Property, which insures "'All Risk' of Direct physical loss or damage including flood, earth movement, and Boiler & and Machinery Insurance" and includes a deductibles provision. (Def.'s 56.1 ¶ 9; Pl.'s 56.1 ¶ 9; Def.'s 56.1 Ex. E, ECF No. 61-6, at 8, 11.) In addition, the Policy provides that "upon payment of any loss, [the] Insurer is subrogated to all the rights of [AvalonBay] to the extent of such payment," and "[i]n the event of any payment under this [P]olicy, except where subrogation rights have been waived, the Insurer shall be subrogated to the extent of such payment to [AvalonBay's] rights of recovery therefore." (Def.'s 56.1 ¶ 9; Pl.'s 56.1 ¶ 9; Def.'s 56.1 Ex. E at 42-43.)

On April 11, 2012, a fire broke out and damaged the Property, resulting in a loss valued at $2,399,846. (Def.'s 56.1 ¶¶ 10, 12;

---

[2] Defendant claims that the Policy is a "Builder's Risk Policy" (Def.'s 56.1 ¶ 9), whereas plaintiff claims that that it is an "All-Risk" property insurance policy (Pl.'s 56.1 ¶ 9). As discussed *infra*, this is a distinction without a difference because, irrespective of the type of insurance policy carried by AvalonBay, the subrogation waiver in the Trade Contracts does not limit plaintiff's recovery against defendant to the Policy deductible.

Pl.'s 56.1 ¶¶ 10, 12.) Pursuant to the Policy, AvalonBay paid a deductible of $254,301 and received reimbursement for the remainder from its insurer. (Def.'s 56.1 ¶¶ 13-14; Pl.'s 56.1 ¶¶ 13-14.) The total cost to repair the plumbing and fire protection work was $159,775. (Pl.'s 56.1 Counterstatement ¶¶ 17-18; Def.'s 56.1 Counterstatement Resp. ¶¶ 17-18.)

B. Procedural History

Plaintiff commenced this action on March 17, 2015. (ECF No. 1.) On March 1, 2016, defendant moved for summary judgment. (ECF No. 61.) Plaintiff filed its opposition on April 1, 2016 (ECF No. 67), and defendant filed its reply on April 18, 2016 (ECF No. 70). The Court held oral argument on May 4, 2016 (ECF No. 72) and has carefully considered the parties' submissions.

II. STANDARD OF REVIEW

The standard for summary judgment is well-settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). Rule 56(c)(1) provides that a

> party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The court "'is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments.'" *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48

3

(emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III. DISCUSSION

Defendant moves for summary judgment and requests that the Court determine, as a matter of law, that the subrogation waiver in the Trade Contracts limits plaintiff's recovery from defendant to, at most, the $254,301 deductible paid for the fire damage to the Property. For the reasons set forth below, the Court disagrees.

A. Applicable Law

Subrogation "allows an insurer to stand in the shoes of its insured and seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse." *Kaf-Kaf, Inc. v. Rodless Decorations, Inc.*, 90 N.Y.2d 654, 660 (1997). The "parties to an agreement may waive their insurer's right of subrogation . . . ." *Id.* However, "a waiver of subrogation clause cannot be enforced beyond the scope of the specific context in which it appears." *Id.* (citing *S.S.D.W. Co. v. Brisk Waterproofing Co.*, 76 N.Y.2d 228 (1990)).

In *S.S.D.W.*, the New York Court of Appeals construed a subrogation waiver provision in a "contract in which the owner agreed to waive all rights against the contractor for damages caused by fire 'to the extent covered by insurance obtained pursuant to [the contract] or any other property insurance applicable to the Work'." 76 N.Y.2d at 232. The plaintiff argued, based on this language, that the

> allocation of the risks and responsibilities . . . [was] that the owner must provide property insurance protection covering *the contractor's Work* and the contractor, in turn, must provide liability insurance covering whatever property damage it may cause *other than to the Work itself*. The waiver clause, plaintiff sa[id], permit[ted] the owner's insurer to proceed against the contractor for property damage caused by its negligence but *not* for damage covered by insurance which the owner has provided to protect the contractor's interest—*i.e.*, damage resulting to the contractor's Work.

*Id.* at 232-33 (citations omitted). Accordingly, the plaintiff contended that, "[a]s to such damage [outside of the Work], there can be no subrogation," and

> [i]n the event of a loss . . . involving fire damage to the Work and areas beyond the Work, the damages may be shared between the owner's insurer (which is responsible for so much of the damage as occurs to the Work) and the contractor's liability insurer (which, assuming there is liability, must bear ultimate responsibility for damages outside the Work).

*Id.* at 233.

4

The Court of Appeals agreed with the plaintiff and concluded that this interpretation of the subrogation provision gave "full effect to the bargain concerning the parties' respective insurance responsibilities" under their contract. *Id*. at 234. Thus, the Court determined that the "waiver clause bar[red] the claim of the owner's subrogee to the extent that the damages sought [were] covered either by: (1) 'insurance obtained pursuant to [the contract]' or (2) 'any other property insurance applicable to the *Work*'." *Id*. at 233 (citation omitted). Notably, the Court emphasized that it made

> no difference whether the policy under which subrogation is sought is one which the owner purchased specifically to insure the Work . . . or some other policy covering the owner's property in which the owner has also provided coverage for the Work. *In either event, the waiver clause, if given its plain meaning, bars subrogation only for those damages covered by insurance which the owner has provided to meet the requirement of protecting the contractor's limited interest in the building—*i.e.*, damages to the Work itself.*

*Id*. at 233-34 (emphasis added).

In addition, the Court concluded that this holding comported with its precedent recognizing "the respective interests of the owner and contractor under an owner's property insurance policy during the course of construction." *Id*. at 234. Under New York law, "the contractor's insurable interest in the insured building extends only to the tools, labor and materials which it has furnished and the owner's insured's right of subrogation is barred only to the extent of that insurable interest." *Id*. (citing *Paul Tishman, Co. v. Carney & Del Guidice, Inc.* 34 N.Y.2d 941, 942-43 (1974), *aff'g* 320 N.Y.S.2d 396 (1st Dep't 1971)). In other words, the "owner's insurer is barred from subrogation only to the extent of property in which the contractor has an insurable interest: *i.e.*, its tools and the labor and materials which it has furnished." *Id*. at 235.

B. Analysis

Defendant argues that *S.S.D.W.*'s holding is "particularly limited to the specific contract language applicable in that case," and that the "contractual language in *S.S.D.W.* is completely distinguishable from the language at issue herein . . . ." (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Br."), ECF Nos. 61-14 and 62, at 8.) Defendant contends that the *S.S.D.W.* "waiver of subrogation provision was specifically and inextricably tied to the owner's insurance procurement obligations under the contract, which was an obligation limited to an all-risk policy for the 'Work,'" and that, in contrast, the Trade Contracts' subrogation waiver "is exceedingly broader . . . insofar as its application is not linked to the owner's insurance procurement obligation at all." (*Id*. at 8-9.)[3] In sum, defendant's

---

[3] In addition, defendant argues that recent case law from New York and other jurisdictions "calls *S.S.D.W.* into question both on philosophical grounds as well as due to the fact that it was decided based upon very specific contract language that is no longer being utilized." (*Id*. at 10-14 & 10 n.1.) As discussed *infra*, the New York cases and federal decisions applying New York law that defendant cites are distinguishable from *S.S.D.W.* because they concerned contracts with differently worded subrogation waivers.

Further, the non-New York cases upon which defendant relies, and that explicitly or implicitly disagree with *S.S.D.W.*, are of no moment in this diversity action, where this Court is obligated, under the *Erie* doctrine, to apply substantive state precedent

position is that, under the Trade Contracts, "the owner and contractor specifically and unequivocally agreed to waive *all* rights against each other for loss to the extent reimbursed by the Builder's Risk Policy." (*Id*. at 9.) Thus, because the insurer has already compensated all losses to the Property—except for the deductible—the subrogation waiver limits plaintiff's recovery from defendant to the unreimbursed $254,301 deductible. (*Id*. at 9-10.)

Plaintiff argues that this action is "on 'all fours' with *S.S.D.W.*, both in terms of the operative contract language, as well as in terms of the operative facts." (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Br."), ECF No. 67, at 9.) Specifically, plaintiff asserts that "the relevant contract language in the *S.S.D.W.* case is substantially identical to the contract language in this case," and that the Court of Appeals' holding cabining the *S.S.D.W.* subrogation waiver to damages stemming from the work performed by the contractor should obtain to the same result here. (*Id*. at 2.)

The Court agrees with plaintiff that *S.S.D.W.* is dispositive of defendant's motion in plaintiff's favor. The similarities between the *S.S.D.W.* waiver and the analogous provisions in the Trade Contracts are striking. As noted, the *S.S.D.W.* contract "waive[d] all rights against the contractor for damages caused by fire 'to the extent covered by insurance obtained pursuant to [the contract] or any other property insurance *applicable to the Work*'." 76 N.Y.2d at 232 (emphasis added). Likewise, in the instant case, the Trade Contracts state that the

> Builder's Risk or property insurance purchased by OWNER provides coverage for CONTRACTOR and OWNER for loss or damage *to the Work*. . . . OWNER and CONTRACTOR waive all rights against each other . . . for loss or damage to the extent reimbursed by Builder's Risk or any other property or equipment insurance *applicable to the Work* . . . .

(Def.'s 56.1 ¶ 8; Pl.'s 56.1 ¶ 8; Def.'s 56.1 Ex. B at 19; Def.'s 56.1 Ex. C at 19 (emphasis added).) The Work under the Trade Contracts consisted of plumbing and fire protection improvements to the Property. (Def.'s 56.1 ¶¶ 2, 5; Pl.'s 56.1 ¶¶ 2, 5.)

Thus, the analysis under *S.S.D.W.* is straightforward. The Trade Contracts prevent plaintiff from recovering from defendant any loss to the Work to the extent that those damages are reimbursed by Builder's Risk or other insurance. However, loss to the Property other than damages to the Work—such as the destruction of the Property by fire—exceeds "the scope of the specific context in which [the subrogation

---

"to any issue or claim which has its source in state law." *In re Gaston & Snow*, 243 F.3d 599, 607 (2d Cir. 2001). Because the breach of contract and negligence claims in this case arise under New York law, this Court must apply the principles articulated by New York's paramount tribunal, the Court of Appeals. *Fabozzi v. Lexington Ins. Co.*, 601 F.3d 88, 91-92 (2d Cir. 2010) ("The holdings of New York's highest court, which it has never repudiated, presumptively control. Where lower state courts appear to have misconstrued or ignored binding precedent, we are obliged to follow the Court of Appeals." (citing, *inter alia*, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938))). The Court of Appeals has not abrogated *S.S.D.W.*, and there is thus no merit to defendant's effort to cast doubt on the "purported strength of *S.S.D.W.*'s legal precedent . . . ." (Def.'s Reply Br., ECF No. 70, at 7; *see also* Tr. of May 4, 2016 Oral Arg., ECF No. 75, at 6:17-19 ("*S.S.D.W.* has been highly criticized for the findings based upon the facts of that case.").)

waiver] appears," *Kaf-Kaf*, 90 N.Y.2d at 660, and, therefore, the waiver does not bar recovery from defendant for those losses notwithstanding any compensatory insurance payments. As *S.S.D.W.* instructs, this construction of the Trade Contracts gives effect to "the respective interests of the owner and contractor" by recognizing that "the contractor's insurable interest in the insured building extends only to the tools, labor and materials which it has furnished and the owner's insured's right of subrogation is barred only to the extent of that insurable interest." 76 N.Y.2d at 234.

Accordingly, there is no merit to defendant's argument that the scope of the subrogation waiver in the Trade Contracts is "exceedingly broader than that contained in *S.S.D.W.* insofar as its application is not linked to the owner's insurance procurement obligation at all." (Def.'s Br. at 9.) Like the contract in *S.S.D.W.*, the insurance obligation here required that any "Builder's Risk or property insurance provide[] coverage for CONTRACTOR and OWNER for loss or damage *to the Work*," and the Trade Contracts waived claims "for loss or damage to the extent reimbursed by Builder's Risk or any other property or equipment insurance *applicable to the Work* . . . ." (Def.'s 56.1 ¶ 8; Pl.'s 56.1 ¶ 8; Def.'s 56.1 Ex. B at 19; Def.'s 56.1 Ex. C at 19 (emphasis added).) Thus, there is a clear nexus between the scope of the insurance obligation and the subrogation waiver in the Trade Contracts and the Work performed by defendant under those agreements, and this linkage tracks the facts in *S.S.D.W.* *See* 75 N.Y.S. 2d at 231 (noting that "Article 17.3 requires that the owner: 'purchase and maintain property insurance *upon the entire Work at the site* to the full insurable value thereof,'" and that "Article 17.6 provides: '[t]he Owner and Contractor waive all rights against each other for damages caused by fire or other perils *to the extent covered by insurance obtained pursuant to this Article or any other property insurance applicable to the Work*'").

Further, defendant's attempt to distinguish *S.S.D.W.*, by citing a non-binding intermediate appellate decision from New York and a federal case that reached the opposite conclusion, is unavailing because those decisions concerned contracts with materially different waiver language reflecting a post-*S.S.D.W.* change in a model contract formulated by the American Institute of Architects. *See Allianz Ins. Co. of Canada v. Structure Tone (UK), Inc.*, No. 03 CIV. 0833 (KMW), 2005 WL 2006701, at *8 (S.D.N.Y. Aug. 15, 2005) ("Here, because the contract at issue is significantly different from the one considered in [*S.S.D.W.*]— indeed, it contains changes effectuated specifically in response to [*S.S.D.W.*]—this court is not similarly constrained."); *Mu Chapter Of Sigma Pi Fraternity Of U.S. Inc. v. Ne. Const. Servs. Inc.*, 709 N.Y.S.2d 677, 677 n.2 (3rd Dep't 2000) ("To the extent defendant relies upon [*S.S.D.W.*] in urging a contrary result, we need note only that the Court of Appeals in [*S.S.D.W.*] was considering the effect of a waiver clause contained in the 1976 version of the American Institute of Architect's contract. Such clause has since been amended for the express purpose of overcoming the holding in [*S.S.D.W.*].").[4] Moreover, the Court of

---

[4] *Atl. Speciality Ins. Co. v. AE Outfitters Retail Co.*, No. 07 CIV. 8508 (LAP), 2014 WL 1918718 (S.D.N.Y. May 12, 2014), and *St. John's Univ. v. Butler Rogers Baskett Architects, P.C.*, 938 N.Y.S. 2d 578 (2d Dep't 2012), are similarly distinguishable on their facts because they analyzed the scope of subjugation waivers within the contexts of agreements that did not track the language of the *S.S.D.W.* contract or the Trade Contracts at issue here.

Appeals specifically rejected as inapposite two of the cases that defendant cites here—*Trump-Equitable Fifth Ave. Co. v. H.R.H. Const. Corp.*, 485 N.Y.S.2d 65 (1st Dep't), *aff'd*, 66 N.Y.2d 779 (1985), and *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau*, 786 F.2d 101 (2d Cir. 1986). *See S.S.D.W.*, 76 N.Y.2d at 236.[5]

Although the parties dispute whether the insurance Policy covering the Property is a "Builder's Risk Policy" (Def.'s 56.1 ¶ 9) or an "All-Risk" general property insurance policy (Pl.'s 56.1 ¶ 9), that distinction is immaterial under *S.S.D.W.* As noted, the Court of Appeals held that

> [i]t makes no difference whether the policy under which subrogation is sought is one which the owner purchased specifically to insure the Work . . . or some other policy covering the owner's property in which the owner has also provided coverage for the Work. *In either event, the waiver clause, if given its plain meaning, bars subrogation only for those damages covered by insurance which the owner has provided to meet the requirement of protecting the contractor's limited interest in the building*—i.e., *damages to the Work itself.*

76 N.Y.2d at 233-34 (emphasis added).

So, too, do the Trade Contracts explicitly link the subrogation waiver with "Builder's Risk *or* any other property or equipment insurance *applicable to the Work* . . . ." (Def.'s 56.1 ¶ 8; Pl.'s 56.1 ¶ 8; Def.'s 56.1 Ex. B at 19; Def.'s 56.1 Ex. C at 19 (emphasis added).) In other words, it does not matter whether the Property carried Builder's Risk insurance applicable only to the Work or a broader form of insurance that ensured other risks in addition to damage to the Work; in either case, the subrogation waiver is limited to compensable damages or loss to the Work. Accordingly, defendant is wrong to assert that "by the plain terms of the waiver subrogation clause, plaintiff has waived *all* of its rights with respect to such damages reimbursed by plaintiff's policy regardless of what it would now like to call this policy . . . ." (Def.'s Reply Br. at 9.)[6]

Finally, defendant contends that the Trade Contracts are materially different from the agreement in *S.S.D.W.* because they provide that "CONTRACTOR shall be responsible for the insurance policy deductible amount applicable to damage to the Work and/or damage to other work caused by CONTRACTOR." (Def.'s 56.1 ¶ 8; Pl.'s 56.1 ¶ 8; Def.'s 56.1 Ex. B at 19; Def.'s 56.1 Ex. C at 19.) Defendant argues that this language shows that "the

---

[5] Defendant also cites myriad federal and state cases applying non-New York law and, as noted *supra*, those decisions are therefore inapplicable. Accordingly, the Court does not discuss them.

[6] Defendant's reliance on *St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 84 (2d Cir. 2005), for the proposition that "New York law recognizes a distinction between property insurance and liability insurance" is misplaced. In *St. Paul*, the Second Circuit considered the question of whether a subrogation waiver provision was unenforceable due to breach of contract. *Id*. at 83. The Second Circuit held that the contract at issue only required subrogation waivers to be included in Builder's Risk and property insurance policies, rather than liability insurance policies, and because the insurance at issue was for general commercial liability, there was no breach of contract for failure to include a waiver in that policy. *Id*. at 85. *St. Paul* is inapposite here because the mere fact that the "subrogation and waiver clause [did] not purport to deal with liability insurance" in that case, *id*., has no bearing on construction of the Trade Contracts, which clearly limit their subrogation waiver to loss to the Work to the extent that those damages are reimbursed by Builder's Risk or other property or equipment insurance.

parties clearly contemplated the allocation of risk for property damage to both 'Work" and non-work caused by [defendant], and *only* assigned [defendant] the obligation to pay the [P]olicy deductible." (Def.'s Reply Br. at 11; *see also* Def.'s Br. at 14-15.) "In interpreting a contract under New York law, 'words and phrases . . . should be given their plain meaning,' and the contract 'should be construed so as to give full meaning and effect to all of its provisions.'" *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (citation omitted). "[A] court should not adopt an interpretation which will operate to leave a provision of a contract without force and effect." *Amaranth LLC v. J.P. Morgan Chase & Co.*, 888 N.Y.S.2d 489, 493 (1st Dep't 2009). "Courts may not 'by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.'" *Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 13 N.Y.3d 398, 404 (2009).

Applying these principles, it is clear that the deductible provision operates separately from the subrogation waiver and imposes an obligation on defendant—irrespective of its liability for other loss—to re-pay the Policy deductible "applicable to damage to the Work and/or damage to other work caused by" defendant. However, limiting plaintiff's recovery in this action to the deductible amount would render the subrogation waiver meaningless. As discussed, that provision only bars claims for damage to the Work insofar as insurance compensates that loss, and it thus contemplates a non-waiver of liability for damages to non-Work aspects of the Property. Therefore, the subrogation waiver does not preclude plaintiff from asserting claims for non-Work damages, and the deductible provision merely requires defendant to pay the Policy deductible notwithstanding the merits of those claims; it does not constrain plaintiff's recovery in an action such as the instant case. In other words, the deductible provision in the Trade Contracts sets a floor, rather than a ceiling, when plaintiff seeks recovery for damages to the Property other than loss to the Work.

In sum, *S.S.D.W.* compels the conclusion that the subrogation waiver in the Trade Contracts does not prevent plaintiff from recovering from defendant more than the deductible amount paid under the Policy because the plain language of the Trade Contracts limits the waiver to any loss to the Work performed by defendant.

### IV. CONCLUSION

For the foregoing reasons, the Court denies defendant's motion for summary judgment (ECF No. 61) in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 18, 2017
Central Islip, NY

\*\*\*

Plaintiff is represented by Daniel Q. Harrington of Cozen O'Connor, 1900 Market Street, Philadelphia, Pennsylvania 19103. Defendant is represented by Braden H. Farber and Richard Brian Camarda of Farber, Brocks & Zane L.L.P., 400 Garden City Plaza, Suite 100, Garden City, New York 11530.